BENJAMIN GRUMBLES, JR. V. SEBRON G. SNEED.
SAME V. W. S. OLDHAM.

The decisions in Crosby v. Huston, 1 Tex. Rep. 203, construing the 40th section of the " Act organizing inferior courts, and defining the powers and jurisdiction of the same," approved 20th December, 1836, (Hart. Dig. Art. 2757,) which provides that " no deed, conveyance, lien, or other instrument " of writing, shall take effect, as regards the rights of third parties, until the " same shall have been duly proven and presented to the court, as required " by the Act for the recording of land titles, &c. ;" and in Fowler v. Stoneum, 11 Id. 478, construing the first clause of the second section of the Act to prevent frauds and fraudulent conveyances, of the 18th January, 1840, are reviewed and considered in this case: neither the authority of those cases, nor the correctness of their determination, is impaired by the construction given in this case to the latter clause of the second section of the Act of the 18th of January, 1840.

The cases of Crosby v. Huston, and Fowler v. Stoneum, approved.

The several sections and clauses of the second section of our Statute of Frauds, considered with respect to their analogy to the statute of 29 Charles II. ch. 3, and the statutes of 13 and 27 Elizabeth, and the respective objects of each.

The clause in the second section of our statute of Frauds of January 18th, 1840, providing that any loan of goods, chattels, or slaves, remaining for the space of three years in the possession of him, or them, or those claiming under the person to whom they are loaned, shall be taken to be fraudulent, as to creditors and purchasers of such possessors, unless, &c., is in the nature of an act of limitation, as well as an act having for its object the prevention of frauds and perjuries ; and was intended to compel persons, who make loans of goods and chattels, and slaves, to have the loan declared in such manner, that all the world may know what title the possessor has.

In contemplation of that law, a purchaser from one who has been in possession of goods, chattels, or slaves, for more than three years, cannot commit a fraud against one, who asserts that he had loaned the property to the party in possession, without exhibiting any written contract of loan.

This statute intended to cut off proof, so far as creditors and purchasers are concerned, of such loans, by any other means than those pointed out by the statute itself ; or, to say the least, mere verbal declarations of a loan, should not be held to affect a creditor, or purchaser from the party, who has held the possession for the time pointed out by the law.

APPEAL from Travis. Tried below before the Hon. John Hancock.

The facts appear from the opinion.

*J. A.* and *R. Green*, for appellant. Sneed and Oldham claim protection, as purchasers from B. Grumbles, Sr., (not innocent purchasers,) under the letter of the statute, (Hart. Dig. Art. 1452,) under which the court below rendered judgment in their favor; from which Benj. Grumbles, Jr., appealed.

The clause of the statute is as follows : " In like manner, when "any loan of goods and chattels, or slaves, shall be pretended "to have been made to any person with whom, or those claiming "under him, possession shall have remained by the space of "three years, without demand made and pursued by due pro-"cess of law on the part of the pretended lender ; or when any "reservation or limitation shall be pretended to have been made "of a use or property, by way of condition, reversion, remain-"der, or otherwise, in goods and chattels, the possession whereof "shall have remained in another as aforesaid; the same shall "be taken, as to the creditors and purchasers of the persons "aforesaid so remaining in possession, to be fraudulent within "this Act, and that the absolute property is with the possession ; "unless such loan, reservation or limitation of use or property "were declared by will, or by deed in writing, proved and "recorded as aforesaid."

It will be perceived, that, in this statute, the word "purchasers" is used without the usual qualification of "innocent," or "*bonâ fide*," or "without notice." The question made, therefore, is, whether the general term, "purchaser," was meant to apply, in its protective influence, to those purchasers who, through notice or fraud, are undeserving of its protection. The conclusion to be deduced from the decisions of this State, not differing in principle in the slightest degree from the present, would be, that, under this statute, a purchaser with notice, and more especially one who had paid nothing, would not be protected. (Briscoe v. Bronaugh, 1 Tex. Rep. 326 ; Fowler v. Stoneum, 11 Id. 478.)

The latter case was decided upon the same statute, being the former clause of the same section of the Act, now involved. Neither clause makes the possession or conveyance of the pro-

perty fraudulent, as between the parties, but only as to creditors and purchasers; and neither clause describes the purchasers intended as innocent purchasers; but that point is left to inference and construction. We do not believe that ingenuity can devise a reason, why a different interpretation should be given to the two clauses. The clauses being in the same section of the same Act, were evidently made to *protect the same persons;* and the words, in "like manner," which lead the clause under consideration, seem still more closely to identify the design and construction of each.

So far as reasoning or principle is involved in the question, we rest with entire confidence on the opinion of the court, in Briscoe v. Bronaugh, and Fowler v. Stoneum, before cited, to which nothing can profitably be added. These authorities are not to be overthrown by the conflicting authorities of other States; especially when they are found to be conflicting, and irreconcilable with themselves, as well as with our own decisions.

In Tennessee, it was held that a creditor, under similar statutes, is not bound by notice, but a purchaser is. (Stanley v. Nelson, 4 Humph. Rep. 484.) The same distinction was taken in Kentucky, in many cases, but finally repudiated as to both. (Tobin v. Helm, 4 J. J. Marsh. Rep. 288.) The only case which we have found on appellees' brief, bearing upon the point, is in 7 J. J. Marsh. Rep. 410, citing 2 Hen. & Munf. Rep. 289, which decides that, where a loan is made for five years, without recording, a subsequent record will not affect a previous creditor. But that a loanor will not be permitted to aid a loanee in defrauding a creditor, seems no reason why a loanee should be assisted in defrauding the loanor, by a purchaser. The principle of the cases in nowise conflicts with our own.

*A. J. Hamilton,* also for appellant.

*W. S. Oldham,* for appellees. It is insisted for the plaintiff, that the defendant had notice of his claim, at the time of the purchase. It is true, that the defendant knew that the

plaintiff set up claim to the negroes, and' he also knew that the law declares all such claims fraudulent and void. The plaintiff claimed the negroes, and so did the party in possession; the defendant wishing to purchase, conceived the absolute property to be with the possession, which had continued three years, and therefore bought of the possessor.

This question cannot be affected by notice. The statute is absolute. There is but one kind of notice, and that is the notice required by the statute—a will, or deed in writing, duly proved and recorded. The law recognizes no other notice, and none such existed in this case.

The statute puts the creditors and purchasers of the party in possession, upon the same footing; no distinction or difference is made between them. Can or will it be pretended, that the creditor of a party remaining in possession of negroes for six years, would be precluded from subjecting such negroes to the payment of his debt, because an adverse claim might be set up by some other person, not by will, or deed in writing, proved and recorded? The creditors and purchasers have only to look to the fact, that the party has been in possession for three years; and a title acquired under such possessor, is good against all persons, whose claims have not been evidenced in the manner prescribed by the statute.

The following authorities are cited in support of the above positions. (Meaux v. Caldwell, 2 Bibb's Rep. 244; Withers v. Smith, 4 Id. 170; Craig v. Payne, Id. 337; Ferguson v. White, 1 A. K. Marsh. Rep. 6; Taylor v. Morton, 5 Dana's Rep. 365; Glass v. Read, 2 Id. 168; Davidson v. Nunallys, 3 B. Monr. Rep. 534; Blair v. Bade, 9 Id. 61; Fightmaster v. Beasly, 7 J. J. Marsh. Rep. 410; Fitzhugh v. Anderson, 2 Hen. & Munf. Rep. 289.) It will be borne in mind, that the provision under consideration is not in the English statute of frauds, but is copied from that of Virginia, where it first originated.

*J. A.* and *R. Green*, for appellant, in reply. In our original brief, we contented ourselves by referring to the case of Fowler v. Stoneum, 11 Tex. Rep. 478, a case decided after

able and elaborate argument, and careful consideration. The cases cited by the defendant, in his petition for rehearing, properly considered, strengthen rather than weaken our position. The first case on the subject, was Gay v. Mosely, 2 Munf. Rep. 543. That case arose on an action of detinue, and the court, as was then common in the courts of law, followed the letter of the statute, deciding that actual notice would not supply registration. Afterwards the case of Lacy v. Wilson, in chancery, arose, and the same point was made by counsel, to which the court respond : "The court is of opinion that, however the case "might have been, in equity, had the said D. Evernan had "notice, &c., that does not arise necessarily in this case, nor is "it intended to be decided, because no such notice appears." (4 Munf. Rep. 313.)

From this decision it clearly appears, that the courts of equity of Virginia, did not hold themselves bound by the construction given the statute by the courts of law, but would hold themselves free to follow the equitable rules of construction adopted by courts of chancery. The only case directly in point, in Kentucky, is Gaines v. Wiggs, 9 B. Monr. Rep. 282. This, too, arose in a court of law. The court say, "whether such "notice might, in the consideration of a court of equity, pre- "clude him from claiming the aid of that court, we do not "decide." The case of Myers v. Peek, 2 Ala. Rep. 648, was an action of trover in a court of law, and cited and approved in Gay v. Mosely.

We have searched, in vain, to find any authoritative exposition of the construction of this clause of the statute, in a court of equity. We have the authority of the courts of Kentucky and Virginia, for asserting that the courts of equity, in those States, do not hold themselves bound by the narrow construction given to the statute by the courts of law. That a court of equity holds a purchaser with notice of a previous equity or unregistered deed, even where the full purchase money has been paid, as a fraudulent vendee, is established by a train of uniform decisions. (Adams' Equity, 315, 319, 320, and cases cited ;

Sanger v. Eastwood, 19 Wend. Rep. 514; and cases cited in Crosby v. Huston, and Fowler v. Stoneum.) Upon these terms, and upon principle, is based the decision in Fowler v. Stoneum, on the first clause of the statute. Our court, having both law and equity powers, has seen proper to follow the enlightened rules of equity, rather than the rigid rules of law, in its construction of the statute. There can be no possible distinction, in principle, between an unregistered deed and an unregistered loan. It is as easy to prove actual notice of one, by perjury, as of the other; and uniformity of decisions is always desirable. To maintain the doctrine of the cases relied on by the appellant, Crosby v. Huston and Fowler v. Stoneum must both be overruled.

The Kentucky case is expressly based upon the previous case of Mason v. Baker, 1 A. K. Marsh. Rep. 208, which decides that notice would not affect a subsequent purchaser from a fraudulent vendor, under the first clause of the Act. The court declares that the decision of the first clause decides the second; that they cannot be distinguished. (Gaines v. Wiggs, 9 B. Monr. Rep. 282.) The case of Mason v. Baker, is exactly the antipodes of Fowler v. Stoneum; so also are the cases upon which the Alabama decision was made, the court citing cases to show that notice will not affect purchasers, under the first clause; and arguing, for that reason, that they would not be affected by notice under the second clause, relative to unregistered loans. That the decision of our own court is correct, on the first clause, and those of Kentucky and Alabama wrong, seems to us clear. It seems an absurdity to provide that, as between the fraudulent vendor and vendee, or loanor or loanee, the deed or loan shall be valid, and yet give the loanee or vendor, full and absolute power of sale, to any and everybody, with or without notice, in spite of all the vendee or loanor can do to save the right guarantied him by the statute.

Whatever may be the construction given to the statute under consideration, the present case is settled by the Act of 1841, if we are able to comprehend the meaning of that Act.

The history of the registration Acts, is about this.  The first Act passed, provides for the registration of "deeds, liens, and other color of title," (Hart. Dig. Art. 2754,) by proving the same in open court.  The Act of January 19th, 1839, (Id. Art. 2760,) provides for the registration, upon acknowledgement or proof before the court, chief justice, or county recorder.  The Act of January 18th, 1840, (under which defendant claims,) provides for the registration of loans, reservations and limitations of the use of property.  (Id. Art. 2763.)  The Act of February 5th, 1840, provides for the authentication of deeds, conveyances, covenants, agreements, deeds of trust, and mortgages, before notaries public, deputies of county clerks, and justices of the peace, as well as recorders and chief justices, and provides that notice shall be equivalent to registration.   (Id. Art. 2768, 2769, 2773.)

The Act of February 5th, 1841, however, which is now in force, provides, in § 20, "that any grant, deed, or instru-"ment, for the conveyance of real or personal property, or "both, or for the settlement thereof in marriage, or separate "property or conveyance of the same on mortgage, or trust to "uses, or on conditions, as well as any and every other deed or ":instrument permitted or required by law to be registered, and "which shall have been heretofore registered, shall be considered " duly registered, &c." (Id. Art. 2776.)   Art. 3777, being § 21 of the same Act, provides for the future proof and registration of "every grant, deed, or instrument, mentioned in the 20th "section of this Act;" nevertheless, "such acknowledgment, pro-" bate, certificate, and registration, or either, as between the "parties and their legal representatives, and all subsequent "purchasers and creditors, with actual notice or reasonable in-"formation of such grant, deed, or instrument, shall not be "deemed requisite, in order to its full effect, validity, and "priority, according to its intrinsic nature."

Was a loan, such an "instrument" as was "permitted or re-quired by law to be registered," when the Act of 1841 was passed ?  An instrument is a writing which evidences a con-tract.  (Bouv. Law Dict. tit. Instrument.)  It is a term, therefore,

as broad in its legal, as in its common signification, and would as readily embrace the written evidence of a contract of loan, as of a contract of sale. The written evidence of an absolute contract of sale, is usually designated as a deed or conveyance; the written evidence of a contract of loan, not having any specific designation, could not be more appropriately described, than under the general term "instrument." That it was an instrument "required by law to be registered," is the basis of defendant's claim, and he will not therefore dispute it. The statute of January 18th, 1840, relied on by defendant, expressly and unmistakably provides, that the written evidence of the contract (that is, the instrument of loan,) shall be recorded. The statute of 1841 provides, that every instrument required to be registered, and which has been registered defectively, shall be considered duly registered. Section 21, then, provides, that every instrument mentioned in section 20, which has not been registered, shall be, in the manner therein pointed out. It also provides, that such registration shall not be deemed requisite against purchasers, with actual notice. The statute is general, and sweeping in its terms. It was clearly meant to cover the whole subject of registration, both as to its prerequisites and its effects. It first confirmed all previous defective registries. Did it not confirm a defective registry of contracts of loan? It provided for the mode of authentication for all future registrations. Did it not provide for the authentication of loans? If not, what law did? It provided that such "authentication," and registration, should not be requisite against purchasers with notice.

We do not believe, therefore, that the strictest construction of this statute, could withdraw the contract of loan from the emphatic language it uses, in enacting that notice shall be equivalent to registration, in every instrument that can be registered. Nor can we see why this provision should be strictly construed. Much is said about proving notice by perjury; and yet, we know that notice of an unregistered deed would be as easy to prove, by perjury, as notice of an unregistered loan.

Grumbles v. Sneed.

And why make any difference ? In whose behalf is the plain purport of this beneficent statute to be construed away ? In favor of a purchaser standing erect, as Shylock, on his legal rights ?—of a purchaser, who has never paid the purchase money, and is not apt to do so, if he lose his suit ?—of a purchaser, with the most ample actual notice of our rights ?—of a purchaser, who assisted his client to evade our just title, by a fraudulent purchase from him, while the litigation for the property was pending ? Even a court of law has never been called upon to sustain such a purchase, against an unregistered right. So far from shaking the case of Fowler v. Stoneum, the defendant has merely exhibited its roots, deeply grounded in the first principles of equity, and indissolubly linked with the case at bar; and upon that case, and the statute of 1841, we willingly rest the case.

BELL, J. These two causes are brought to this court, by appeals from the District Court for Travis county. There is a single question in each of the cases. Both cases are precisely alike, in their facts, and we shall therefore treat them, for the purposes of this opinion, as one cause.

The question presented to our consideration, and argued with great ability by counsel, arises upon the proper construction of the clause of our statute, concerning frauds and fraudulent conveyances, passed on the 18th of January, 1840, which relates to loans.

The appellees purchased the slaves involved in these suits, from Benjamin Grumbles, Sr., the father of the appellant. The appellant argues that Benjamin Grumbles, Sr., held the slaves as a loan from him; that the appellees had full notice of his claim to be the true owner of the property, before they purchased; that such notice affects the appellees, as purchasers; and that he can enforce his claim upon the property in their hands, in the same manner that he could have done, if the property remained in the hands of Benjamin Grumbles, Sr., the loanee.

The appellees admit that they had notice, before they purchased, that the appellant claimed to be the true owner of the slaves in question, and to have loaned them to their vendor; but they assert, that their vendor denied the fact of the loan; and they say that the appellant cannot enforce his claim upon the property, because Benjamin Grumbles, Sr. had been in possession of the slaves in controversy, for more than three years previous to the sale by him to appellees, without any demand made and pursued by due process of law, by the pretended lendor, the appellant; and because the pretended loan was not declared by will, or by deed in writing, proved and recorded, as is required by the latter clause of the second section of the Act to prevent frauds and fraudulent conveyances, of the 18th of January, 1840.

That clause of the statute .of the 18th of January, 1840, relating to loans of goods and chattels, or slaves, has never received a construction by this court. The 40th section of the "Act organizing inferior courts, and defining the power and "jurisdiction of the same," approved 20th December, 1836, was considered by this court, in the case of Crosby v. Huston, 1 Tex. Rep. 203. And in the case of Fowler v. Stoneum, 11 Id. 478, the first clause of the 2d section of the Act of the 18th January, 1840, was construed by this court. It is contended, on the part of the appellant, that the principle enunciated by this court, in the cases of Crosby v. Huston and Fowler v. Stoneum, applies equally to the clause of the statute of the 18th January, 1840, which relates to loans; and that notice of a loan, will affect the title of the purchaser from the loanee, in the same manner that notice of an unregistered deed will affect the title of the second purchaser, who takes another deed from the same party that made the first conveyance, as was decided in Crosby v. Huston,—or in the same manner, that notice of a former fraudulent conveyance, will affect the title of a subsequent purchaser from the fraudulent vendor, as was decided in the case of Fowler v. Stoneum.

It is contended by the appellant, that the affirmance of the

judgments of the District Court, in the cases now before us, will virtually overthrow the cases of Crosby v. Huston and Fowler v. Stoneum, and that those cases will no longer be authoritative precedents. Upon the maturest reflection that we have been able to give to this subject, we have come to a different conclusion.

The 40th section of the Act of December 20th, 1836, which received a construction in the case of Crosby v. Huston, is in the following terms: "No deed, conveyance, lien, or other instru- "ment of writing, shall take effect as regards the rights of third "parties, until the same shall have been duly proven and pre- "sented to the court, as required by the Act for the recording "of land titles," &c.

The decision in the case of Crosby v. Huston, was upon the well established principle of courts of equity, that fraud shall not be permitted to prevail. It is upon this principle, that courts of equity will not permit a subsequent purchaser, who has notice, at the time of his purchase, of a prior unregistered conveyance, to avail himself of his title against the prior con- veyance. The authorities cited by Chief Justice Hemphill, in the case of Crosby v. Huston, are the leading cases in which this rule of the equity courts is declared. He also cites Judge Story's Commentaries on Equity Jurisprudence, where the authorities are reviewed. And the rule is laid down in Crosby v. Huston, with its proper and well established limitation, and that is, "that the letter of the statutes (on the subject of registry) will "be departed from, only where the notice (on the part of the "subsequent purchaser,) is so clearly proved, as to make it "fraudulent in him to take a conveyance in prejudice to the "known title of the other party." We are accustomed to say a great deal about the policy of the registry laws. What is the policy of the registry laws? Certainly it is mainly to prevent and suppress frauds. The registry laws are but an extension of the principle of the statute of frauds, which requires con- tracts for the sale of land to be in writing. One statute requires the contract to be in writing; the other declares that it shall not take effect, as against the rights of third parties, unless it

be also registered. The object of both laws is to prevent and suppress fraud. But statutory enactments, which seek to control the actions of men, can never perfectly attain their object; and so frauds will be perpetrated, notwithstanding the efforts of the law makers to suppress fraud. And for this reason, the courts have engrafted an exception upon the statute—an exception in the very spirit of the statute itself, and having directly in view the object which the statute seeks to accomplish. The registry Acts require certain instruments to be recorded. Why? To prevent frauds. But how will registration prevent frauds? By giving notice to all the world of what has been done. Shall one, then, who has notice of what has been done, where there is no registration, be permitted to practice a fraud, because another has not used a means, pointed out by the law, to prevent the perpetration of fraud? The courts say that he shall not. And this is what the case of Crosby v. Huston says. We think the authority of the case can never be overthrown, while it is the policy of the law to prevent frauds, and while the courts of the country have a proper sense of their high vocation.

In the case of Fowler v. Stoneum, 11 Tex. Rep. 478, the first clause of the second section of the Act of 18th of January, 1840, was under consideration. This clause, as was stated in the opinion of the court, in the case referred to, embraces the substance of the second section of the statute of 13 Elizabeth, ch. 5, and of the 27 Elizabeth, ch. 4. The English and American decisions on the question involved, were very carefully examined by the court. It was shown that, even in England, there had been, in the language of Judge Story, "no inconsiderable "diversity of judicial opinion, in reference to the true construc- "tion of the statutes of Elizabeth." It was shown, also, by the present chief justice of this court, that the doctrine finally adopted by the English courts, is admitted, by the ablest jurists, to be full of difficulty; and according to Judge Story, "has "been confirmed, rather upon the pressure of authorities, and "the vast extent to which titles have been acquired and held

"under it, than upon any notion that it has a firm foundation "in reason, and a just construction of the statute." It was also shown, that the American courts had found much difficulty in yielding their assent to the doctrine of the English courts; and that, in fact, the ablest judges of this country, Chief Justice Marshall, Chief Justice Spencer of New York, and Chancellor Kent, have not been willing to go to the full extent of the English doctrine. It was shown to be announced by Chancellor Kent, as "the settled American doctrine," that "a *bonâ fide* "purchaser, for a valuable consideration, is protected under "the statutes of 13 and 27 Elizabeth, as adopted in this country, "whether he purchases from a fraudulent grantor, or a fraudu- "lent grantee." It was shown also, that the Supreme Court of Pennsylvania, in the case of Lancaster v. Dolan, 1 Rawle's Rep. 231, and in the case of Foster v. Walton, 5 Watts's Rep. 378, wholly rejected the doctrine of the English courts, and held, that a voluntary conveyance in Pennsylvania, is not void against a subsequent purchaser, by force of the statute 27 Elizabeth, ch. 4. Amidst such a diversity of judicial opinion, and because the question was an original one in the courts of this State, this court, in the case of Fowler v. Stoneum, felt at liberty to think for itself, and to adopt such a construction of the statute, as seemed to be most strongly supported by reason, and most in accordance with its true intent and meaning, keep- ing in view the fact, that the great object of the statute is, to prevent frauds upon creditors and innocent purchasers.

In what we have to say in reference to the construction of that clause of the statute to prevent frauds and fraudulent con- veyances, which is involved in the cases now before us, we think it proper to premise, by noticing the peculiar structure of our statute of frauds. Our statute has more than one object. Its first section is a re-enactment, in substance, of some of the most important provisions of the statute of 29 Charles II. ch. 3, which was entitled "An Act for the preven- tion of frauds and perjuries." The first clause of its second section, as we have already seen, embraces the substance of the

37

statutes 13 and 27 Elizabeth. Its last clause, in reference to loans of goods and chattels, or slaves, has no counterpart in either the statute 29 Charles II, or the statutes of 13 and 27 Elizabeth; but in its spirit and intent, it has a much closer relationship to the statute of Charles, than to the statutes of Elizabeth. The statutes of Elizabeth have for their object, the prevention of fraud merely. The statute of Charles has an additional object. It not only seeks to prevent frauds, but it seeks to prevent perjuries also; and in construing the first section of our statute, and the last clause of the second section, it should be borne in mind, that the prevention of perjuries was no less the object of the law makers, than the prevention of frauds.

To prevent frauds, and at the same time to prevent perjuries, the statute prescribed the kind of evidence by which certain things shall be proved. It provides that, "where any "loan of goods and chattels, or slaves, shall be pretended to "have been made to any person with whom, or those claiming "under him, possession shall have remained by the space of "three years, without demand made and pursued by due pro- "cess of law, on the part of the pretended lender," * * * * * "the same shall be taken, as to creditors and purchasers of the "persons aforesaid, so remaining in possession, to be fraudulent "within this Act, and that the absolute property is with the "possession, unless such loan is declared by will, or deed in "writing, proved and recorded as aforesaid."

We are of opinion that this provision is in the nature of an Act of limitation, as well as an Act having for its object the prevention of frauds and perjuries. We think it intended to compel persons, who make loans of goods and chattels, or slaves, to have the loan declared in such manner, that all the world may know what title the possessor has. We do not think that it was the intention of the framers of the statute, to leave the question of notice to be adjudicated by the courts, in any case. We do not think that, in contemplation of the law, one who purchases from a party who has been in possession of goods and chattels, or slaves, for more than three years, can commit a fraud, by

his purchase, against another, who asserts that he has loaned the property to the party in possession, without exhibiting any written contract of loan.

This clause of our statute was first enacted in Virginia, in the year 1785. It has since been adopted generally in the southern States. There are decisions upon it in the States of Virginia, Kentucky, Tennessee and Alabama, and probably in other States. These decisions have uniformly held, that, as to purchasers from the loanee, and as to creditors, the absolute property in the thing pretended to have been loaned, is with the possessor, and that the question of notice will not be considered by the courts. (See the cases of Gay v. Mosely, 2 Mumf. Rep. 543; Meaux v. Caldwell, 2 Bibb's Rep. 244; Withers v. Smith, 4 Id. 170; Craig v. Payne, Id. 337; Ferguson v. White, 1 A. K. Marsh. Rep. 6; Taylor v. Morton, 5 Dana's Rep. 365; Gaines v. Wiggs, 9 B. Mon. Rep. 282; Kenner v. Smith, 8 Yerg. Rep. 206; Gilliam v. Spence, 6 Humph. Rep. 160; Oden v. Stubblefield, 4 Ala. Rep. 40.)

We are disposed to follow this long line of authorities, believing that the decisions of the enlightened courts of the States above named, declare the true sense and meaning of the statute; and not feeling ourselves at liberty to engraft upon the statute another exception, not clearly demanded by its leading objects.

We do not think there is any force in the argument of the counsel for the appellants, as to the effect of the 21st section of the statute of 5th February, 1841. That statute, even if it could be made to apply to the question of a loan of goods and chattels, or slaves, only dispenses with registration, in a case where there is a written instrument that may be recorded. In this case, there was no written instrument, declaring the loan. And we think the statute intended, so far as creditors and purchasers are concerned, to cut off the proof of such loans, by any other means than those pointed out by the statute itself; or, to say the least, that mere verbal declarations of a loan, should not be held to affect a creditor, or purchaser from the party

who has held the possession for the time pointed out by the law; and that no one can perpetrate a fraud, by purchasing in the face of a mere claim not evidenced by will, or deed in writing. We think, therefore, that the judgments of the District Court ought to be affirmed, and it is ordered accordingly.

Judgments affirmed.