### J. W. LOTT AND OTHERS V. J. R. BERTRAND AND OTHERS.

Reservations or limitations of a use or property in land, by way of condition, reversion, remainder or otherwise, are not within the provisions of the last clause of the second section of the statute of frauds and fraudulent conveyances. (O. & W. Dig., art. 937.)

By deeds of marriage settlement made in 1828, A. and B., the intended husband and wife, conveyed to trustees the property of B., the intended wife, consisting in part of slaves, limiting the same to the separate use of B. for her life, with remainder to her issue by A., and empowering the trustees with the consent of B. to exchange the property conveyed for other property, which should be held under like limitations; which deeds were recorded in Florida where made. The personal property remained in the possession of said A. and B. after their marriage for more than three years, when they exchanged some of the property for land in this State, the said deeds not being recorded in this State. The said A. and B. having conveyed said land in trust for the payment of debts of A., the plaintiffs, being the issue of the marriage, and as such taking the estate in remainder limited by the marriage settlement, sued A. and B., together with the trustee in the conveyance last mentioned, and the *cestuis que trust*, for the purpose of enjoining the sale of the land by the trustee, and

to declare and protect their rights therein, charging all the defendants with actual notice of the rights of the plaintiffs in the land. *Held*, that the last clause of the second section of the statute of frauds and fraudulent conveyances has no application, and that the plaintiffs can assert their rights against all the defendants chargeable with notice; and that it was error to instruct the jury that the marriage contract, not having been recorded in the county wherein the land lay, was to be held fraudulent as against the trustee and *cestuis que trust*, they being purchasers and creditors.

It would be otherwise if the property in controversy were goods and chattels; in which case the reservation or limitation, unless declared by will or deed, duly proven and recorded, would, by virtue of the statute of frauds and fraudulent conveyances, be held to be fraudulent as to creditors of or purchasers from the party holding possession of such property for more than three years, notwithstanding such creditors or purchasers had actual notice of the rights of the plaintiffs.

APPEAL from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit by the appellants, instituted on the 22d of November, 1855, against Robert A. Lott, Susan C. Lott, John R. Bertrand, Samuel Mills, Robert Mills, and D. G. Mills.

The plaintiffs were the children of Robert A. and Susan C. Lott, and brought this action to restrain the defendant, Bertrand, from selling certain lots in the town of Washington, conveyed to him by R. A. and Susan C. Lott, in trust, to secure certain promissory notes executed by R. A. Lott to R. & D. G. Mills and others. The plaintiffs claimed an interest in the town lots as remainder-men, by virtue of a marriage contract or deeds of marriage settlement executed by Robert A. and Susan Lott, in the year 1828; and prayed that on final hearing the deed of trust to Bertrand might be cancelled and be perpetually enjoined, and that trustees be appointed to effectuate the trusts declared in the marriage contract, and protect the rights of the plaintiffs.

On the 12th of January, 1828, Robert A. Lott and Susan C. Behn, then intending marriage, made, together with Luke Lott and Jesse Lott, their deed of marriage contract or settlement, by which all the property of the said Susan was conveyed to Luke and Jesse Lott, trustees, providing that they should hold the same "during the life of the said Susan, to enable her to take the

profits thereof free from the control of her husband, and at her absolute disposal, and after the death of said Susan to the use of such child or children of the said Susan and Robert A. as may be living at the time of her death; and in default of any child or children, then to the use of such persons as she, with the concurrence of her intended husband, shall by deed, attested by two witnesses, appoint; or by her last will and testament direct. And it is further agreed that if at any time it should be judged advisable by the said trustees or survivor of them, their heirs, &c., to make a transfer or exchange of said estate with the assent of said Susan, that then the estate so acquired shall be subject to the same limitation as is provided herein for the other property hereby conveyed; and it is further agreed that in case of the death of said Robert without issue, leaving the said Susan survivor, the said property shall vest absolutely in the said Susan, in like manner as if no marriage had taken place." This conveyance was duly recorded in Jackson county, Florida, where it was made, on the 13th day of March, 1828.

After the marriage, Robert A. Lott, together with the trustees, on December 25, 1828, executed another deed, referring to and reciting the previous conveyance, and for the purpose of making it more effectual, stipulating that the property, consisting of certain slaves, &c., should be held by the trustees "for the separate use, benefit and behalf of the said Susan Lott, the aforesaid wife of the said Robert A. Lott, for and during her natural life, free from the use, management and control of the said Robert A. Lott, and independent of him, and that they, the said Luke and Jesse, (the trustees,) will permit her, the said Susan, to have the use and possession of said slaves and their increase when and from time to time as her convenience may require; and that upon the application of the said Susan they will hire out either or all of said slaves, and collect the hire arising therefrom, and apply the same to the separate use and maintenance of said Susan during her life, and from time to time as she may require; and that they, the said Jesse and Luke, will account with the said Susan for all or any moneys which they may receive for or on her account in the execution of this confidence and trust; and upon this further trust that

they, the aforesaid Luke and Jesse, will, from time to time, upon the request of the said Susan, for whose separate use the property aforesaid is held by them, sell or exchange all or any part of the property aforesaid, and with the proceeds of said property, if sold, purchase other property of the same kind, or such as will be more convenient or suitable to the wants and use of her, the said Susan; and whether the said property is exchanged or sold, they, the said Jesse and Luke, trustees, covenant to stand possessed of such other property as may be purchased or procured in exchange, upon the same trusts and conditions, and for the same use as they hold the property in this indenture specified and described. And the said Luke and Jesse covenant, at the death of the said Susan, to deliver up said slaves and their increase, to be equally divided between such of the children of the said Susan as may be living at the time of her death. And the said Robert covenants that if the said Luke and Jesse should depart this life without making any appointment of a trustee to carry into effect the conditions of this deed, she, the said Susan, still living, he, the said Robert, will join in any conveyance with her, the said Susan, or will make any separate deed which may be required to revive or give force to the trusts hereby created, or which may be proper to secure to his aforesaid wife the separate use and enjoyment of the slaves," &c.

In 1836, R. A. Lott and his wife removed to Texas, bringing with them some of the slaves covered by the marriage contract, and two others acquired in exchange for other of the property named therein.

On the 19th of January, 1853, Henderson & Baxter conveyed the town lots in controversy to Susan C. Lott, acknowledging in their deed the receipt from her of $6000 as the consideration. By R. A. Lott, who was made a witness for the plaintiffs, it was proved that the lots were paid for out of the property covered by the marriage contract, or with other property acquired in lieu thereof.

On the 22d day of March, 1854, R. A. Lott, executed his notes for considerable sums of money to R. & D. G. Mills, and others of his creditors, and to secure their payment he and his wife conveyed in trust the lots in controversy, together with other real

42

estate, to the defendant, Bertrand, as trustee. The plaintiffs proved by R. A. Lott that Samuel Mills, who, as agent for the creditors, obtained the deed of trust, had notice of the marriage contract, and that the lots in controversy were acquired with some of the property covered by it.

At the instance of the defendants, Bertrand and the Mills, the the court instructed the jury that if the property embraced in the marriage settlement remained in the possession of Robert A. and Susan C. Lott for more than three years, the marriage contract not having been recorded in Washington county, the title of the property was with the possession, so far as creditors or purchasers were concerned, and the jury should find for these defendants. Instructions asked by the plaintiffs, to the opposite effect, were refused. ·

There was a verdict for the defendants, and judgment accordingly. Plaintiffs' motion for a new trial was overruled, and they appealed.

*Sayles & Bassett*, for appellants.—Is the marriage contract void because not recorded in Texas?

It was executed and recorded in the State (then Territory) of Florida, and comes expressly within the decision in the well considered case of The Bank v. Lee, 13 Peters, 107, the principle of which decision was recognized in the subsequent case of De Lane et als. v. Moore et al., 14 Howard, 253; that when the title to property has vested by the laws of one State, it will not be divested by the removal of the property into another State from a non-compliance with the laws of registration. In Hunter v. Foster, 4 Hum., 211, it was held that a post nuptial settlement, made in another State of the Union, will prevail against the subsequent creditors of the husband in that State, though the post nuptial settlement be not registered after removal to that State. There is no law compelling owners of slaves immigrating to this State to register their titles. And, indeed, it is not in the power of the legislature to declare that the title to property shall be divested for want of registration. (Edrington v. Mayfield, 5 Tex., 363.)

In Loving v. Hunter, 8 Yerg., 4, it was held that the statute does not embrace a case where the limitation or reservation was made by deed or will in another State, where the goods are situate at the time; and the reason is obvious. For the creation of an estate in remainder our statute requires a deed or will duly proven and recorded.

But by the laws of another State the estate has been created, the title vested, and there is, as said by the Supreme Court of Tennessee, no law requiring the owners of personal property to record their titles. Will it be seriously urged that the estate of these children, duly created in accordance with the law of the State where the property was situated, can be divested by the removal of the property to this State, and the refusal of the parents to record the deed when they had absolute control over the property and over the children?

The rights of a *cestui que trust* cannot be prejudiced by the acts of his trustee, and it is not in them by any acts of omission or of commission to divest a title once vested according to law.

In Morgan v. Elam, 4 Yerg., 375, the trustee attempted to cancel the deed of trust by erasing his name, but the act was held nugatory. Still less could he defeat the estate of the beneficiary by an act of negligence.

In Parks v. Willard, 1 Tex., 350, it was held that the title of a *cestui que trust* was not divested by the failure of the trustee to record the title. The case of Parks v. Willard, just cited, is conclusive in favor of the appellants upon the question of registration. In that case it is held that the Act of 1840 is prospective in its operation, and does not apply to a conveyance executed before its passage. How could the Act of 1840 apply to and govern a conveyance made in 1828?

In Gamble v. Dabney, 20, T. 69, the doctrine of Parks v. Willard and Edrington v. Mayfield is recognized; and Mr. Justice Roberts, in delivering the opinion of the court, says that the rights of the appellees (who in that case were remainder-men, under a deed similar in its terms to the present,) would not have been affected by a failure to record the deed, although possession might have remained with the parents for three years.

Whatever effect upon the rights of the appellants the want of the registration of the marriage contract might have as against subsequent purchasers without notice, it has been settled by repeated adjudications of this court that the deed is nevertheless binding as to subsequent purchasers *with notice.* (Parks v. Willard, 1 Tex., 350; Crosby v. Huston, 1 Tex., 203; Gamble v. Dabney, 20 Tex., 69; 1 Story Com. on Eq., 397.)

No case can be found in which a contrary doctrine has been held. In Kenner v. Smith, 8 Yerg., 206, relied upon by appellees, there was no allegation or proof that the purchaser had notice, and the title was held to be with the possession. In that case, therefore, there was no question as to the effect of notice. It was supposed by the learned judge who presided at the trial that the doctrine of notice was overthrown by the recent case of Oldham v. Grumble. In my view, that case simply establishes the proposition that a contract of loan must be proven by an *instrument in writing,* as the sale of lands must be shown by a written instrument, and that the doctrine of the effect of notice to dispense with registration, is recognized and affirmed.

The adjudications upon this question by this and other courts have been too numerous and uniform to be now shaken, or to require further discussion.

That the creditors in this case, by their agent, had full and express notice of the rights of the appellants, before the execution of the deed of trust, there can be no doubt. The deed of the property to Mrs. Lott recited that it was for a consideration paid by her. Actual notice that the property in controversy was had and held under those limitations and trusts was given to the agent of the creditors.

*J. D. & D. C. Giddings,* for the appellees. The statute is clear and positive as to the kind, and only kind of evidence necessary and competent to give validity to a limitation or remainder as against a creditor or purchaser. The question is, what evidence does the statute require the remainder-man to produce, in order to defeat the title of the creditor or purchaser from one who has been three years in possession, without demand made, &c.

I contend, that as the legislature has declared that it shall not be done unless by *will* or *deed*, in writing *duly proved* and *recorded*, no other evidence is sufficient for that purpose.

The statute makes no difference or distinction between creditors with or without notice, but it makes the limitation, or remainder, after the expiration of three years, without demand made, &c., on the part of the remainder-man, absolutely and without quali-fication, fraudulent, and declares that the absolute property is with the possession—in all cases but · one, and that is where the limitation or remainder is declared by will or deed duly proved and recorded.   In a suit by a remainder-man against a purchaser from one in possession for the space of three years, the purchaser proves an absolute title in himself to the property, when he shows that the party from whom he purchased has been in possession three years; and there is but one mode, under the statute, of defeating this absolute title to the property, and that is by pro-ducing record evidence of the limitation or remainder, by will or deed in writing duly proved and recorded.

The appellants contend that, in order to defeat the absolute title of the purchaser, it is only necessary to produce the parol evidence of a party to the deed, to the fraud, and by him prove the marriage settlement in 1828, in the territory of Florida; and that the property is the proceeds of the original trust property, though for the space of thirty years it has passed through count-less mutations and changes and transfers.   Such a doctrine is not only unauthorized by the positive provisions of the statute, but it is in direct conflict with its letter and policy, and whenever this court shall, by its decisions, restrict or limit the provisions of the statute to creditors and purchasers without notice, it will make a dis-crimination which the legislature did not make, and transcend the power given it, and assume a prerogative denied it by the consti-tution of the State.   The legislature makes three years undis-turbed possession higher, stronger and more conclusive evidence of title, than any and every degree of parol evidence establishing an adverse claim.   So conclusive is the presumption of absolute title under such undisturbed possession, that the legislature has declared that it shall not be rebutted but in one way, and that by

will ór deed in writing duly proved and recorded, and that this evidence must be produced. The record of the title of the re-mainder-men, (the title being in writing duly proved and recorded,) is a part of the title itself; and, as against creditors and purchasers without such record evidence, there is no title in the remainder-man. The title being in writing duly proved and recorded, is the essence of the contract. Compliance with these requirements of the statute, and the production of record evidence of title on the trial, will give the remainder-man a standing in court. In this way alone can he defeat the title of a purchaser of one who has been in the undisturbed possession of the property for more than three years, and there is no exception in favor of infants, married women, or others. See the case of Kenner v. Smith and Wife, 8 Yerger, 206, where the case arose under the statute, of which ours is a copy. The case is in all respects the same as this; so, also, the case of Ferguson v. White, 1 Marsh, 7, in which it was held that, as the possession of five years constitutes the re-servation fraudulent under the statute, no record made after the lapse of such possession can affect the claim of creditors and pur-chasers, whether they have become such before or after the making of such record. At whatever period they may have acquired the appellation, in both instances they are, in the words of the act, creditors and purchasers, and by avoiding at their instance the re-servation or limitation, the letter of the act will not only be better preserved, but as all inquiries into the time of their becoming creditors will be excluded, the preventing of perjury, (one of the mischiefs designed to be remedied,) will be more effectually secured.

The last case cited was a strong one; in it the actual record notice had been given—but after the lapse of five years. In the case now before this court, the notice prescribed by the statute has never been given.

MOORE, J. This case has been argued here, and was by the charge of the judge made to turn in the court below solely upon the effect that the statute of frauds and fraudulent conveyances was supposed to have had upon the marriage contract under which the plaintiffs claimed as remainder-men, by reason of the failure to

Lott v. Bertrand.

record it in Washington county. The plaintiffs insist that the con-
tract was duly recorded in the then territory of Florida, shortly
after its execution, and previous to the removal of the trust pro-
perty to this State, and that it was not necessary that it should be
again recorded here to secure their title; but this being fixed and
completely vested in them by the record in Florida, the contract
followed and acted upon the property here for their protection.
And this doctrine they contend has been recognized and main-
tained by this court in the cases of Parks v. Willard, 1 Tex.,
350; Edrington v. Mayfield, 5 Tex., 363; and Gamble v. Dabney,
20 Tex., 69. But if the record in Florida is not sufficient, they
say that, as the defendants had notice of the trust, the record of
the contract was, as to them, immaterial. On the other hand, the
defendants with equal zeal maintain that these questions have
been settled in their favor by the decision of this court in the case
of Grumbles v. Sneed, 22 Tex., 565. A reference to the authori-
ties to which these cases refer, or expressions in some of them
which were not called for by the facts, might to some extent present
a seeming conflict between them; but we think they can be easily
and readily reconciled with each other. It is not important, how-
ever, that we should advert more particularly to them, as we do
not regard them as having any immediate bearing upon this case
as it is now presented before us.

The property about which this suit is prosecuted is real estate.
It does not, therefore, come within the provisions of the last clause
of the second section of the statute of frauds and fraudulent con-
veyances. If the plaintiffs were seeking to enforce their rights as
remainder-men in any goods or chattels, the possession whereof
had remained in another for the space of three years, without
demand made and pursued by due process of law, it would be im-
portant to enquire whether the record of the marriage contract in
Florida would be sufficient to protect their title here; and if not,
it might no doubt with great force be urged that, under the au-
thority of Grumbles v. Sneed, notice of the trust would be
ineffectual against the defendants. But if plaintiffs can recover,
it is upon the ground that there is a resulting trust in their favor
with reference to the property in this suit, by reason of its having

been acquired with the property in which they had a remainder.
So far as the parties claiming under the marriage contract are
concerned as between themselves, it is immaterial whether it is
recorded or not. Among them it is valid and binding. It is only
creditors and purchasers from the party in possession who can insist
upon its invalidity. Although, then, the contract was not recorded
at the time the property embraced in it, or the proceeds of it, was
converted into the property now in suit, (if that has been done,)
as against the parties to the contract, the plaintiffs were entitled
to claim by its terms, and as a resulting trust, the same interest
in this property that they had in that originally embraced in the
contract. The question then arises, whether the remainder-men
can assert this right against the creditors or purchasers from the
owner of the life estate, who have notice of their title. According
to the well established and recognized rules of equity jurispru-
dence, we think they may. If it were goods and chattels into
which the original property in the trust of like description had
been converted, then, as the policy of the law, as is held in Grum-
bles v. Sneed, requires that proof of a title in remainder shall be
made only by will or deed, in writing, duly recorded, no other
character of proof would be sufficient. But this is a statutory
rule prescribed with reference to a title in remainder in this
character of property. In regard to land, as that is not embraced
in this clause of the statute, the court will require only such evi-
dence as is necessary by law to establish a title to it. And for
this purpose, it will not be questioned that a deed duly executed,
though not recorded, is sufficient as between the parties and pur-
chasers with notice; and that the purchaser of a trust estate with
notice is chargeable with the trust. We think, therefore, the
charge of the court with reference to the necessity for the record
of the marriage contract in Washington county, was incorrect and
calculated to mislead the jury. Whether the defendants, who
claim as purchasers and creditors, had any notice of plaintiffs'
claim, and at what time they received it, are questions of fact, the
consideration of which was withdrawn from the jury, by the charges.

In its present attitude before us, we do not regard it as proper
that we should express any opinion as to the respective equities of

the parties under any phase which the case may assume. Nor will we, in the absence of argument, consider any of the questions presented by the defendants' bills of exceptions to the various rulings of the court. Several of these, especially with reference to the admissibility of testimony, present points that seem to us worthy of serious consideration; and as they may, and some of them probably will, arise again in the future progress of the case, we should, if they had received the attention of counsel, have felt called upon to have expressed an opinion upon them. But as they have not, and are not necessary to a decision of the case as now before us, we decline doing so.

The judgment is reversed and the cause remanded.

Reversed and remanded.